**Sandeep Mohan MEHTA, Appellant**

v.

**C.G. WIGEN, Warden, MVCC.**

**No. 14–3166.**

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Dec. 17, 2014.

Opinion filed: Jan. 29, 2015.

Sandeep Mohan Mehta, Philipsburg, PA, pro se.

Rebecca R. Haywood, Esq., Michael L. Ivory, Esq., Office of United States Attorney, Pittsburgh, PA, for Defendant–Appellee.

Before: AMBRO, VANASKIE and SLOVITER, Circuit Judges.

OPINION *

PER CURIAM.

Sandeep Mohan Mehta, a federal prisoner proceeding pro se, appeals from the order of the United States District Court for the Western District of Pennsylvania ("the District Court") denying his habeas

---

petition filed pursuant to 28 U.S.C. § 2241. For the reasons that follow, we will vacate the Magistrate Judge's June 12, 2014 order and remand with instructions that the Magistrate Judge grant Mehta's habeas petition and direct the Bureau of Prisons ("BOP") to credit Mehta's sentence for the time spent in custody in England.

I.

In February 2006, Mehta pleaded guilty in the United States District Court for the Northern District of Georgia ("the Sentencing Court") to conspiracy to defraud the United States in violation of 18 U.S.C. § 371. In April 2006, he was sentenced to 46 months in prison, to be followed by a two-year term of supervised release. He was then ordered to report to the Federal Correctional Institution in Allenwood, Pennsylvania, by July 11, 2006, to begin serving his sentence. Mehta failed to report and remained at large until he was apprehended in England on July 13, 2010. He was held in custody in England until he was extradited to the United States on March 31, 2011. In light of his failure to report, Mehta was charged in the Sentencing Court with criminal contempt in violation of 18 U.S.C. § 401(3). He pleaded guilty to that charge in May 2011.

Mehta's sentencing hearing on the criminal contempt charge took place in August 2011. At the hearing, the Sentencing Court determined that the advisory Sentencing Guidelines range was 8 to 14 months in prison. A discussion then took place concerning whether the BOP would credit Mehta's criminal contempt sentence for the time that he had spent in custody in England:

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

If the defendant wishes to address the Court, he may do so, but let me just be up front with you. One of the things I'm going to ask, as I understand it he was held for a year in Britain or England awaiting extradition to the United States. Evidently he did not readily agree to extradition. My question is going to be, is BOP going to give him credit for that time?

(App. at 4.) In response, the prosecutor stated that he did not believe that the BOP would credit Mehta's sentence for that time. The court then stated: "I may double my sentence to make sure he doesn't get credit, or double it and then give him credit and come back down to 14 months." (*Id.* at 6.) The court explained that this computation would, "[i]n effect double it and then give him credit, bring it back down and show in the sentence I have already given him credit." (*Id.*)

The prosecutor argued that the Sentencing Court should impose a sentence of between 12 and 14 months. In doing so, the prosecutor urged the court to take into account the fact that the BOP could award the aforementioned time credit. The court acknowledged this point: "I think I'm going to try to take care of it, but not by adding." (*Id.* at 29.) Ultimately, the court imposed a 14–month prison sentence, which would run consecutive to Mehta's 46–month sentence. In its judgment of sentence, the court specifically addressed the issue of the time credit: "In setting this sentence, the court believes that BOP will NOT award credit for the time the defendant spent in custody in England from (July 13, 2010 thru March 31, 2011) before extradition. Otherwise, the sentence would have been greater." (Appellee's Supplemental App. at 17.)

Thereafter, Mehta asked the BOP to credit his sentence for his time spent in custody in England pursuant to 18 U.S.C. § 3585(b). That statute provides that

[a] defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—

(1) as a result of the offense for which the sentence was imposed; or

(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

*that has not been credited against another sentence.*

18 U.S.C. § 3585(b) (emphasis added). The BOP denied Mehta's request and denied his appeals that followed.

Next, in December 2012, Mehta, who was (and still is) incarcerated within the Western District of Pennsylvania, filed a pro se habeas petition in the District Court pursuant to § 2241, challenging the BOP's denial of the § 3585(b) credit. After the parties agreed to have the case decided by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), the Government filed its opposition to the petition and Mehta countered with a reply. On June 12, 2014, the Magistrate Judge denied habeas relief. In doing so, the Magistrate Judge stated that the BOP, relying on the language in the 2011 judgment of sentence, "interpreted the statute to mean that [Mehta] had already received sentencing credit for the time he spent in custody in England and therefore he could not receive additional credit pursuant to § 3585(b)." (App. at 104.) The Magistrate Judge concluded that this interpretation was reasonable. This appeal followed.

## II.

We have jurisdiction over this appeal

pursuant to 28 U.S.C. § 1291.[1] In reviewing the denial of a § 2241 petition, we exercise plenary review over the District Court's legal conclusions and review its findings of fact for clear error. *O'Donald v. Johns,* 402 F.3d 172, 173 n. 1 (3d Cir. 2005) (per curiam).

The United States Supreme Court has made clear that " § 3585(b) does not authorize a district court to compute the credit at sentencing." *United States v. Wilson,* 503 U.S. 329, 334, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992). Rather, the computation is to be made by the Attorney General, through the BOP, after the defendant begins his sentence. *See id.* at 333–35, 112 S.Ct. 1351. Here, the BOP denied Mehta's request for a credit under § 3585(b) because "[t]he [S]entencing Court clearly indicate[d] the time period in question was considered and applied to the sentence imposed by the Court." (App. at 40.) Assuming for the sake of argument that the BOP's reasoning is subject to "some deference," *see Rios v. Wiley,* 201 F.3d 257, 275 n. 16 (3d Cir.2000), *superseded on other grounds as stated in United States v. Saintville,* 218 F.3d 246, 248–49 (3d Cir.2000), we nevertheless conclude that this reasoning was in error.

The Sentencing Court made clear that it "[did not] want [Mehta] to have credit." (*Id.* at 6.) Pursuant to *Wilson,* however, the court lacked the authority to decide whether he was entitled to that credit. Ultimately, the Sentencing Court did not go so far as to grant or deny the credit; however, the court did make its position on the credit known in its judgment of sentence, noting that Mehta's 14–month sentence was based on the presumption that the BOP would not grant him credit. When the BOP eventually denied the cred-

it, it essentially did so because the Sentencing Court had already taken the position that Mehta should not benefit from the credit.

The problem with the BOP's reasoning is that, because the Sentencing Court never had the authority to compute the credit in the first place, the BOP could not rely on the court's position that Mehta should not benefit from the credit as the basis for its denial. The Government, however, argues that the Sentencing Court's actions did not amount to a § 3585(b) credit, but rather were merely akin to a sentencing adjustment under U.S.S.G. § 5G1.3(b). We consider that argument below.

Section 5G1.3 concerns the imposition of a sentence when the defendant is subject to a previous, undischarged sentence. *See* U.S.S.G. § 5G1.3. Under subsection (b), when "a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction," the sentence for the instant offense must be imposed as follows:

(1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and

(2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

U.S.S.G. § 5G1.3(b). In applying this provision, a sentencing court first calculates the relevant Guidelines range for the instant offense. *See* U.S.S.G. § 5G1.3 cmt. n. 2D. The court then determines what

---

1. Mehta does not need a certificate of appealability to proceed with this appeal. *See United States v. Cepero,* 224 F.3d 256, 264–65 (3d Cir.2000) (en banc), *abrogated on other grounds by Gonzalez v. Thaler,* —— U.S. ——, 132 S.Ct. 641, 181 L.Ed.2d 619 (2012).

total prison term would be appropriate. *See id.* Finally, the court subtracts from that term the amount of time that the defendant has already served on his other, undischarged term to arrive at the actual sentence for the instant offense. *See id.* That sentence is then run concurrent with the undischarged term. *See id.*

The Government asserts that section 5G1.3(b)(1)'s language, which allows for an adjustment "if the court determines that such period of imprisonment will not be credited to the federal sentence by the [BOP]," supports the Sentencing Court's actions because "[the court] adjusted Mehta's sentence on the contempt conviction by taking into account the amount of time it believed that the [BOP] would not credit to his sentence." (Appellee's Br. 18.) Although this argument may have some appeal at first glance, it is not ultimately persuasive. First, the Government does not argue that section 5G1.3(b) itself controls here, and the Government has not demonstrated that any other Guidelines provision (or any other authority, for that matter) is on point. Second, a reviewing court (or the BOP) can definitively determine the amount of an adjustment awarded under section 5G1.3(b), for it need only determine how much time the defendant has served on his undischarged sentence. Here, however, one can only speculate as to the amount of the "adjustment" awarded by the Sentencing Court, for it is not clear what sentence the court would have imposed had it believed that the BOP would *grant* Mehta credit under § 3585(b). Although the Sentencing Court may very

well have simply lengthened the sentence by the amount of time that Mehta had spent in custody in England, the court also seemed to be considering a scenario where his 14-month sentence would be doubled. (*See* App. at 6 ("I may double my sentence to make sure he doesn't get credit, or double it and then give him credit and come back down to 14 months.").) Third, whereas section 5G1.3(b) is mandatory and provides a benefit to the defendant by effectively shortening his instant sentence, the Sentencing Court's actions here were discretionary and designed to have Mehta spend more time in prison. Accordingly, we cannot conclude that the Sentencing Court's actions reflected an "adjustment" akin to the one authorized in section 5G1.3(b).

Given the circumstances of Mehta's flight and his efforts to contest his extradition to the United States, it is certainly understandable that the Sentencing Court did not want him to benefit from a § 3585(b) credit. But as *Wilson* instructs, the computation of the credit is made by the BOP, after the defendant begins his sentence. Although it was the BOP that ultimately ruled on Mehta's request for a § 3585(b) credit, the BOP should not have based its ruling on the actions of the Sentencing Court.[2]

In light of the above, we will vacate the Magistrate Judge's June 12, 2014 order and remand with instructions that the Magistrate Judge grant Mehta's habeas petition and direct the BOP to credit Meh-

---

2. Had the Sentencing Court sentenced Mehta to 23 months in prison for the criminal contempt charge, a subsequent award of § 3585(b) credit for the approximately nine months during which he was in custody in England would have left him serving about 14 months in prison—the same amount of time that he actually faced here. And, in that scenario, there would have been no need for

him to file this lawsuit. Of course, that scenario presumes that any appeal by Mehta challenging the 23-month sentence—an above-Guidelines sentence—would have been unsuccessful. We need not, and do not, speculate as to whether our sister court in the Eleventh Circuit would have upheld such a sentence on direct appeal.

ta's sentence for the time spent in custody in England. Because it appears that Mehta is scheduled to finish serving his sentence in August 2015, we trust that the Magistrate Judge will enter her order swiftly.