# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 14, 2019

No. 18-50512

Lyle W. Cayce
Clerk

In re:  UNITED STATES BUREAU OF PRISONS, DEPARTMENT OF JUSTICE,

> Respondent - Appellant

Appeal from the United States District Court
for the Western District of Texas

Before HIGGINBOTHAM, SMITH, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

The U.S. Bureau of Prisons (BOP) appeals a contempt sanction related to its calculation of sentencing credits for federal prisoners. We reverse.

## I.

## A.

This case began with a disagreement between the district court and the BOP regarding the implementation of the revocation sentence of Ruben Hernandez. Hernandez was convicted in federal court of conspiracy to transport illegal aliens and sentenced to twelve months' imprisonment and three years of supervised release. During his term of federal supervised release, Hernandez was arrested by local law enforcement and charged in state court with being a felon in possession of a firearm, theft of a firearm, and possession of cocaine. Hernandez spent over a year in pretrial detention on these state charges. The two state firearm charges were later dismissed. On

No. 18-50512

November 15, 2016, Hernandez was acquitted of the remaining state drug possession charge.

Federal authorities took custody of Hernandez, and the government petitioned the district court to revoke his supervised release based on his alleged drug and firearm possession. On March 13, 2017, the district court revoked Hernandez's supervised release and sentenced him to 10 months imprisonment. At the revocation hearing, Hernandez requested credit for time served in state custody. The district court orally denied this request. The revocation judgment orders "that the defendant, **Ruben Hernandez**, be committed to the custody of the U.S. Bureau of Prisons for a term of **TEN (10) months**, pursuant to 18 U.S.C. § 3583(e)(3) with credit for time served from **November 14, 2016 forward**." The BOP later determined that Hernandez was entitled to credit for the 543 days he spent in detention following his state arrest. Because Hernandez had already served more than his 10 month sentence, he was released.

The district court learned of Hernandez's release, and concluded that the BOP's sentence calculation was inconsistent with the revocation judgment. According to the BOP, the district court then directed a probation officer to contact the BOP and express the court's disagreement with its credit calculation. Romulo Armendariz, an Operations Manager at the BOP's Designation and Sentence Computation Center, responded that the BOP was required to give Hernandez credit for the full period he spent in state custody under 18 U.S.C. § 3585(b). The district court, through the probation officer, maintained that the BOP had made a mistake. The court requested that the BOP either take Hernandez back into custody or provide the name and mailing address of a person to whom a summons could be sent for a Show Cause hearing.

2

No. 18-50512

B.

When the BOP did not re-arrest Hernandez, the district court opened a civil contempt proceeding against Armendariz.[1] The court issued an order to show cause why Armendariz should not be held in contempt for violating the court's revocation order by improperly calculating Hernandez's sentence. The district court later issued a supplemental order to show cause related to the calculation of the sentence of another defendant, Antonio Bustamante-Huerta, who was released in 2012.[2] The district court subsequently added Craig Pickles, Section Chief of Sentence Computation at the BOP, as an additional respondent in the contempt proceeding.

The district court held a contempt hearing on January 29, 2018. The court began by explaining that Armendariz and Pickles were named in their official capacities, and that the contempt proceeding was not against any individual. The court then raised for the first time the case of another defendant, Francisco Javier Hernandez, whose supervised release was revoked in 2011. The district court had ordered Francisco Hernandez's sentence to run consecutively to a pending state case. Yet because Francisco Hernandez had not yet been convicted in state court at the time of the revocation, he was awarded credit for time served and released. He was later convicted in state court. The district court expressed its view that the BOP was in contempt of

---

[1]     The district court initially requested that the prosecutor involved in Ruben Hernandez's case prosecute the contempt proceeding. The U.S. Attorney's Office declined the court's invitation to prosecute the alleged contempt, stating that it concurred with the BOP's credit determination and did not believe that contempt was appropriate. The U.S. Attorney informed the court that it would instead represent Armendariz. The district court stated that it intended to appoint a special prosecutor, but did not do so.

[2]     Armendariz attests that he was not personally involved in Bustamante-Huerta's sentence computation, but that Bustamante-Huerta may have been released early due to a data entry error.

court because the BOP awarded credit for time served in state custody despite the district court's instruction that the federal sentence be consecutive.

The BOP expressed its position that it is required by statute to award credit for time served in official detention when that time has not been credited to another sentence. *See* 18 U.S.C. § 3585(b). The BOP repeatedly explained that, although the district court has the authority to order a consecutive sentence, the BOP cannot run the federal sentence consecutively if there is no other sentence in place. Ruben Hernandez, for example, was acquitted in state court and therefore had no state sentence. The BOP acknowledged that, in some instances, defendants are awarded credit for time served in pretrial state detention, released from federal custody, and subsequently convicted in state court. But the BOP explained that it must "compute the sentence in the here and now," and it cannot hold prisoners indefinitely "until we find out what's going to happen in the future." The BOP nonetheless promised "to communicate the Court's concerns to the Bureau and see if we can come up with some type of resolution."

The district court then ordered the BOP to file an "advisory to the Court" explaining its position. The court stated that its "suggestion would be to follow the statute unless you have a court order saying otherwise." The BOP filed a "Court Advisory" restating its legal position. Dissatisfied with this response, the district court set another hearing "to determine the appropriate sanctions to be imposed." After receiving this order, the BOP requested clarification as to what contempt findings the district court had made. The district court denied the request for clarification, stating that it would amount to an advisory opinion, and reiterated that a hearing would be held to determine sanctions.

On April 25, 2018, the district court held a sanctions hearing. The court substituted the BOP for the named individual respondents. The court reiterated its view that it has the authority to order consecutive sentences, and

that the BOP is not running sentences consecutively when it gives prisoners credit for time served on unadjudicated state cases. At the conclusion of the hearing, the district court stated that it was ordering the BOP not to award credit under § 3585(b)(2) for time served in state detention when the district court imposes a consecutive sentence. The court described this order as a "sanction." The court further explained that its order would apply "[i]n my cases only," not nationwide, "[a]nd anybody that violates that injunction will then be facing [a] personal, individual contempt situation."

The district court took no further action in the case. On June 25, 2018, the BOP filed a notice of appeal from the district court's April 25, 2018 decision.

II.

We must first assure ourselves of our jurisdiction. *See Hill v. City of Seven Points*, 230 F.3d 167, 169 (5th Cir. 2000). The BOP asserts that the district court's contempt sanction is either a final decision appealable under 28 U.S.C. § 1291 or an interlocutory injunction appealable under 28 U.S.C. § 1292(a)(1). We have jurisdiction under § 1291, and therefore need not address § 1292(a)(1).

"The general rule in this circuit is that civil contempt orders are not appealable final orders for the purposes of 28 U.S.C. § 1291," but an exception "exists '[w]hen a civil contempt motion is not part of continuing litigation, . . . because no underlying case awaits final resolution.'" *Quilling v. Funding Resource Grp.*, 227 F.3d 231, 234 (5th Cir. 2000) (quoting *In re Grand Jury Subpoena for Attorney Representing Criminal Defendant Reyes-Requena*, 926 F.2d 1423, 1429 (5th Cir. 1991)). This is a standalone civil contempt proceeding initiated by the district court. We therefore have jurisdiction under § 1291 so long as the district court issued a final decision in this matter.

"A decision is final when it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Askanase v. Livingwell,*

*Inc.*, 981 F.2d 807, 810 (5th Cir. 1993) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978)). A "civil contempt order is not 'final' for purposes of appeal unless two actions occur: (1) a finding of contempt is issued, and (2) an appropriate sanction is imposed." *In re U.S. Abatement Corp.*, 39 F.3d 563, 567 (5th Cir. 1994). The district court in this case did not make an explicit contempt finding. And despite the BOP's request for clarification, the court refused to explain the factual or legal basis for its conclusion that the BOP had violated a court order.

We nonetheless find that the district court held the BOP in contempt. The court repeatedly expressed its view that the BOP was violating its revocation judgments, and twice stated that it would hold a hearing to determine appropriate sanctions. The district court then imposed a final sanction in the form of an oral injunction against the BOP. The court did not enter a written order, despite indicating at the sanctions hearing that it planned to do so. But the oral injunction was not tentative, and the district court did not indicate that the sanction was open to further argument or reconsideration. Rather, the district court asked the BOP to affirm that it understood the scope of the injunction. The court also made clear that the injunction would be effective immediately and stated that, "after today, if some individual in BOP were to execute their duty in a manner in violation of this Court's findings, it would be individual liability."

The BOP understandably interprets this order to signify that its officials are now operating under the threat of individual contempt sanctions. We have previously affirmed a contempt sanction for the violation of an oral injunction, where the contemnor was aware of the injunction and "in fact considered

himself bound by" it. *In re Bradley*, 588 F.3d 254, 263 (5th Cir. 2009).[3] The immediate effect of the district court's order distinguishes this case from contempt sanctions that we have held to be non-final, such as monetary sanctions in an amount yet to be determined. *See Thornton v. General Motors Corp.*, 136 F.3d 450, 453 (5th Cir. 1998) (holding that an order suspending attorney from practice effectively immediately was an appealable final sanction, but an order imposing unquantified attorney's fees was not final); *see also Cruz v. Fulton*, 714 F. App'x 393, 396 (5th Cir. 2018) (finding no jurisdiction because "the dollar amount of contempt sanctions remains yet to be determined"). Under these circumstances, the district court's failure to put its injunction in writing does not render its order non-final.

We note that it is highly unusual for a district court to make a finding of contempt and to issue a contempt sanction without entering a written order explaining the basis for its findings and describing the sanction imposed. These omissions are relevant to the merits of this appeal. But a lack of procedural formality does not shield a district court's final decisions from appellate review under 28 U.S.C. § 1291.[4]

---

[3] Other circuits similarly treat oral injunctions as enforceable orders. *See, e.g., Lau v. Meddaugh*, 229 F.3d 121, 123, 123 n.2 (2d Cir. 2000); *In re Charlotte Observer*, 921 F.2d 47, 48, 50 (4th Cir. 1990). We agree with the Second Circuit that, although Federal Rule of Civil Procedure 65(d) "contemplates the issuance of a written order," a district "court's failure to comply with the specific requirements of this rule does not render the injunction void." *Lau*, 229 F.3d at 123, 123 n.2; *see also Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 577 (5th Cir. 2005) (explaining that a district court's failure to fully comply with Rule 65(d) "does not require that the injunction be reversed or vacated") (quotation omitted). As we noted in *Bradley*, 588 F.3d at 261–63, the Seventh Circuit appears to take a different position. *See Bates v. Johnson*, 901 F.2d 1424, 1427–28 (7th Cir. 1990) (holding that an oral injunction is not enforceable, and therefore not appealable). We do not follow the Seventh Circuit's view that a party "is under no judicial compulsion" until a judge "record[s] an injunction or declaratory judgment on a separate document." *Id.* at 1428.

[4] The district court did not set out its order in a separate document as required by Federal Rule of Civil Procedure 58(a). But this "failure to set forth a judgment or order on a separate document when required by [Rule] 58(a) does not affect the validity of an appeal from that judgment or order." FED. R. APP. P. 4(a)(7)(B); *see also Moreno v. LG Electronics,*

No. 18-50512

### III.

"We review contempt orders and sanctions imposed under a court's inherent powers for an abuse of discretion." *United States v. City of Jackson, Miss.*, 359 F.3d 727, 731 (5th Cir. 2004). A district court's inherent power to sanction contempt "is not a broad reservoir of power, ready at an imperial hand, but a limited source; an implied power squeezed from the need to make the court function." *NASCO, Inc. v. Calcasieu Television and Radio, Inc.*, 894 F.2d 696, 702 (5th Cir. 1990); *see also Crowe v. Smith*, 151 F.3d 217, 226 (5th Cir. 1998). As "inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980). The contempt power is not an appropriate means for a district court to express its reasoned disagreement with a federal statute. Threatening government officials with individual contempt sanctions for complying with federal law, as the district court did here, is a clear abuse of discretion.

### A.

We first briefly review the legal framework governing the calculation of sentencing credits. The Sentencing Reform Act of 1984 provides:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences
>
> (1) as a result of the offense for which the sentence was imposed; or
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

---

*USA Inc.*, 800 F.3d 692, 696–97 (5th Cir. 2015) (noting that Rule 4, as amended, states that a failure to comply with Rule 58(a) does not affect the validity of the appeal).

18 U.S.C. § 3585(b).

The Supreme Court has squarely held that § 3585(b) "does not authorize a district court to compute the credit at sentencing." *United States v. Wilson*, 503 U.S. 329, 334 (1992). This responsibility belongs to the Attorney General, acting through the BOP. *Id.* at 335; *see also Leal v. Tombone*, 341 F.3d 427, 428 (5th Cir. 2003). The BOP's procedures for calculating credit under § 3585(b) are set out in its Sentence Computation Manual. *See* U.S. Dep't of Justice, Federal Bureau of Prisons Program Statement No. 5880.28 (July 20, 1999).[5]

Confusion sometimes arises, as it did here, when a defendant requests that the district court award credit for time served and the court purports to grant or deny this request at sentencing. Because the district court lacks the authority to award or deny credit, the BOP is not bound by its decision. *See, e.g., Mehta v. Wigen*, 597 F. App'x 676, 680 (3d Cir. 2015) (holding that the BOP erred in denying credit under § 3585(b) based on the sentencing court's intent). The sentencing court does "retain residual authority" to consider a defendant's time in custody. *United States v. Hankton*, 875 F.3d 786, 792 (5th Cir. 2017). If the court determines that the BOP will not credit a defendant's prior time served, the court can reduce the defendant's sentence under § 5G1.3(b) or § 5K2.23 of the U.S. Sentencing Guidelines. *Id.* But the district court must calculate the defendant's final sentence itself; it cannot simply order the BOP to award credit. Moreover, neither of these Guidelines provisions authorizes a district court to *increase* a defendant's sentence to deny credit that the defendant is otherwise entitled under § 3585(b).

District courts also "have discretion to select whether the sentences they impose will run concurrently or consecutively with respect to other sentences that they impose, or that have been imposed in other proceedings, including

---

[5]     The Manual is available at https://www.bop.gov/policy/progstat/5880_028.pdf.

No. 18-50512

state proceedings." *Setser v. United States*, 566 U.S. 231, 236 (2012). The Supreme Court has held that a district court may order that a federal sentence run consecutively to an anticipated but not yet imposed state sentence. *Id.* at 236–37. Yet the authority to choose a concurrent or consecutive sentence presupposes the existence of another sentence. If a prisoner completes his federal sentence before another sentence is imposed, the BOP lacks the authority to hold him beyond his release date.[6] *See* 18 U.S.C. § 3624(a) ("A prisoner shall be released by the Bureau of Prisons on the date of the expiration of the prisoner's term of imprisonment," less credit for satisfactory behavior).

B.

We next review the district court's contempt finding. "A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Waste Mgmt. of Wash., Inc. v. Kattler*, 776 F.3d 336, 341 (5th Cir. 2015) (quoting *Hornbeck Offshore Servs., LLC v. Salazar*, 713 F.3d 787, 792 (5th Cir. 2013)). Contempt findings must be supported "by clear and convincing evidence: 1) that a court order was in effect, 2) that the order required certain conduct by the respondent, and 3) that the respondent failed to comply with the court's order." *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000) (quotation omitted); *see also Waste Mgmt. of Wash.*, 776 F.3d at 341. The district court's factual findings are reviewed "for clear error and its underlying conclusions of law *de novo*." *City of Jackson*, 359 F.3d at 731.

The district court made no explicit factual findings to support its decision to hold the BOP in contempt. Nor did it identify which specific court orders the

---

[6]     If a prisoner is convicted on a state charge while still in BOP custody, the BOP will generally withdraw double credit for time served in state custody. *See* Sentence Computation Manual at p. 1 – 24B.

BOP violated, notwithstanding the BOP's "request that the Court clarify its order to reflect such findings as to how and when the Respondents violated an order of th[e] court." The district court's refusal to identify the basis for its contempt finding was in itself an abuse of discretion.

Moreover, we can identify no evidence in the record to support the conclusion that the BOP violated a "definite and specific" court order. *Waste Mgmt. of Wash.*, 776 F.3d at 341. In light of its statements at the show cause hearing, the district court appears to have deemed the BOP in contempt of several of its revocation judgments. But the court did not identify any particular judgment that specifically instructed the BOP not to award credit for time served under 18 U.S.C. § 3585(b). The court instead expressed its view that the BOP should have interpreted the imposition of a consecutive sentence to disallow credit for time served in state custody, even if no state sentence had yet been imposed. As outlined above, such an interpretation is inconsistent with the statute and the Supreme Court's holding in *Wilson*, 503 U.S. at 334. The BOP did not violate a court order by implementing the revocation judgments according to governing law.

C.

Even if the district court had not erred in holding the BOP in contempt, the sanction imposed is contrary to law. The court ordered, in its cases only, that the BOP not award credit under 18 U.S.C. § 3585(b)(2) for time served in state detention when the district court imposes a consecutive sentence. This injunction is inconsistent with the mandatory language of § 3585(b), which states that "[a] defendant shall be given credit" if he meets the statutory requirements. As the Supreme Court has explained, "Because the offender has a *right* to certain jail-time credit under § 3585(b), and because the district court *cannot* determine the amount of the credit at sentencing, the Attorney General

11

has no choice but to make the determination as an administrative matter when imprisoning the defendant." *Wilson*, 503 U.S. at 335 (emphasis added).

Given the district court's lack of authority over credit awards, it was improper to order the BOP to deny custody credits required by statute. The district court's error was compounded by its threat to hold BOP officials in individual contempt for fulfilling their statutory duties. Because the injunction exceeds the district court's legal authority, we need not address the BOP's alternative argument that it fails to comply with the specificity requirements of Federal Rule of Civil Procedure 65(d)(1).

IV.

For the foregoing reasons, the district court's contempt finding and injunction are REVERSED.